The next matter is United States v. Russia on Wynn. So do you guys have an opinion on... Well, this is going to give you a lot to think about, I'm afraid. You may proceed. Thank you, Your Honor. Good morning, I guess. My name is Albert Mellis. I represent Mr. Wynn. I have two discreet issues before the court. One is whether the court below erred in not giving Mr. Wynn an adjustment for his role in the offense. And the other is whether the court... You admit that's purely discretionary on the part of the district judge. We have a district judge with us today, so he will tell you that it's up to the district judge. And unless he is so out of line that it shocks the conscience of our court, we're going to defer to the district court, aren't we? No, I think it was out of line based on the facts of his case. There were other people who did as little as he did and who were treated in the same way that he was, wasn't there? That I don't know, Your Honor. I think Judge Sullivan... Not Judge Sullivan. Scullin. Scullin said that there were other people who sold drugs. His argument, your argument for him was that all he did, he was in jail for most of the length of this conspiracy that he was a part of, and that all he did was sell drugs over what, a few-month period? About a six-month period, yes. On four or five occasions. And I think Sullivan said that there were other people who did that and received a similar sentence. I don't recall that. I can't tell you what other defendants offhand what they received and what their roles were. Judge Scullin said that in his opinion. I think his exact words were something along the lines of, I don't find that you're any less culpable than anyone else in the conspiracy. And Judge Scullin was impressed that even though he was in prison, he was a member of the 110 gang for years. Whatever that is. There is scant evidence to that. The only evidence in this case against Mr. Nguyen were the FBI 302 reports and the police reports of the controlled buys. He never denied that he was part of that gang, did he? No, but he did deny knowledge of most of the events in the indictment. Did he deny knowledge of the gang? Pardon me? Did he deny knowledge of the community gun that was passed around? I don't think he was asked the question. What happened was the record is so sparse dealing with Mr. Nguyen. To start off with, there's 51 overt acts in this indictment. He was only mentioned in one of them. Most of the gun offenses preceded the date that he was charged with the drug sales. There's about 16 of them if you put together the government's discovery and the pre-sentence investigation report. There's about 16 controlled buys over that six-month period. But, you know, the guidelines still mean something. And if you go to Section 3B1.1, which I have reproduced at pages 12 and 13 of my brief, it says that the enrolled offense is a highly fact-specific consideration. And it lists a number of factors that the court should apply. And every single one of them does not apply in Mr. Nguyen's case. The degree to which the defendant understood the scope and structure of the activity, the degree in which the defendant participated in planning or organizing the criminal activity, the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority, the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had to perform those acts, and the degree to which the defendant stood to benefit from the criminal activity. Most of those don't even apply to Mr. Nguyen. If you look further down the application notes, they really pretty much describe his role, which was he sold drugs on occasion. Yeah. Well, most of those in your terms would not apply to anybody who were drug sellers, would it? I'm sorry. I didn't hear you there. Most of those would not apply to people who were just drug sellers, would you? Right. So then all of those people would also be treated as minor or minimal. Well— And there's no indication that that was so. There's nothing in the record about that. Yeah. All there is in the record is a judge's felon statement that I don't find you to be any less culpable than anyone else. He didn't even attempt to apply any of these— Do you want to address the gun issue? Well, yes. I mean, again, there's no evidence that Mr. Nguyen knew about the guns. And certainly the government concedes that he wasn't personally involved with the guns to the extent the guns were— But did he know there was a gun circulating in the gang? There's nothing in the record to say that— A judge felon called the community gun. There's nothing in the record to support that Mr. Nguyen knew about that. I thought that he said that he knew that the people were armed and used guns. I don't believe that's true. I think what I said was—and I reproduced that. Again, the plea agreement generically talks about what the 110 gang did. And the reason for that is because—and I had discussions with Mr. Commodore about this. Mr. Nguyen said, look, I don't know that all this happened. I was in jail most of the time. But it was a take-and-deliver proposition. He either signed the plea agreement as is or he pleaded without the agreement, which we didn't want to do. Our Soto case is very strong and very strongly against it. You do have the opinion in another case by Judge Newman where a person tried to distance himself from it, from the guns, and there we said he couldn't be charged with it. I still think— This isn't like that. Well, I still think there has to be some evidence that he knew about it, not just he was in the gang. So membership in the gang is not enough— I don't think so. —to charge him with specific offenses like the gun offense. Another—the only bit of evidence other than the documents dealing with the sales and a few social media photographs, the probation officer put in the pre-sentence investigation report, multiple witnesses have identified Roshan Nguyen as a member of the gang. So I said, in objecting to that, tell me who the witnesses are and what they said. And she didn't do it. And she just came back with a supplementary report. How many of this gang went to trial and how many pled, do you know? I think one went to trial. Well, we'll ask the government. They must know. I thought you said in your brief that basically the government was offering the same plea agreement to everybody and it was on a take-it-or-leave-it basis, and essentially everybody had to plead or they would withdraw the plea agreement. Well, my point is that the recitations of the facts in the plea agreement was a take-it-or-leave-it proposition. I can't hear you. I'm sorry. The recitations of facts in the plea agreement was, as I understood it, a take-it-or-leave-it proposition. It basically said we're not going to change, not going to customize it for every defendant who pleads guilty. I do think all but one pleaded guilty and one went to trial. Anthony Hopper was it? Unless there's further questions, that's all I have to say. Thank you. You're reserved a minute for rebuttal. We'll hear from the government. Thank you. May it please the Court, Nicholas Palmender on behalf of the government. Were you the attorney below with the 110 gang? That's correct, Your Honor. So how many went to trial? One defendant went to trial, Your Honor. The remaining defendants all pled guilty. That defendant was convicted after trial. What was his sentence? Do you know? I believe I would have to double-check. He was sentenced to more than, I think, approximately 30 years in prison. He was found responsible by the jury for a homicide. And that's one of the points that I think is actually relevant for purposes of the mitigating role adjustment. Collins Counsel noted the fact that we have to pay attention to the guidelines, and obviously that's true. Application Note 3 of the Mitigating Role Adjustment Guideline 3B1.2 states that one of the things the district court ought to consider is the offense level and whether the defendant's conduct is commensurate with the offense level that's applied. And the example that's given in the application notes is in the case of a fraud case where the defendant doesn't personally profit very much but is held responsible for a large loss amount, that may be a case where a mitigating role adjustment is appropriate. In this case, the defendant's conduct admittedly was focused on drug dealing. Given the way the RICO guidelines operate, his offense level was based on that drug deal. And, in fact, his particular offense level, a level 24, is supported purely by the controlled buys of drugs from him. It was not even elevated based on drug sales by other members of the conspiracy group. You say he may have been a small-time member of the gang, but what he was charged with and focused on was drug dealing. And as a drug dealer, he was. Well, I wouldn't necessarily concede that he was a small member of the gang. Yeah, no. Yes, Your Honor. You don't want to concede anything. The reason why the defendant received a considerably larger sentence is because his offense level was considerably larger, but to account for the fact that his conduct involved a murder. And so he had a much higher offense level. In this case, the defendant's conduct was commensurate with the offense level. And as the Court has noted, three other co-defendants, based on the allegations and the indictment and also in their plea agreements, their conduct was limited to drug dealing or, in the case of one of them, counterfeit credit cards. Was there any evidence that Roshon Winn ever was in the same place with the gun or knew about the gun? Well, we do not have evidence, Your Honor, that he was in actual possession of a firearm or that he was around the use of firearms. What we do have are a couple of things that I think are relevant for that gun enhancement. First of all, the gang activity, the gun activity within the gang was prolific. As recited in the indictment and as also recited in Appellant Winn's PSR, the factual basis, it recounts multiple actions by the gang members involving guns and involving using those guns to commit violence. But do you ever have Winn in the same place as the gun in any of that? We do not, Your Honor. But, again, the standard, as Judge Calabresi mentioned, under Soto and also under this Court's decision in Batista, is that the defendant either needs to have actual knowledge that other people, other co-conspirators, are using guns to further the enterprise or that it must be reasonably foreseeable if there is no such actual knowledge. I would argue that we have both here. In the defendant's plea agreement, he admitted that he understood how the gang worked. He admitted that the gang protected its territory through the use of guns and firearms. He also admitted that he was able, as a member of the gang, to sell drugs within gang territory because of that protection. That was the primary money-making activity of the gang was drugs sales. And that comes from the plea agreement, you say? Pardon, Your Honor? That comes from the plea agreement. That comes from the plea agreement. Can I ask you if there's a… A disdefendant's plea agreement? This defendant's plea agreement, the factual basis is recounted at Appendix Pages 55 and 56. He acknowledges in the factual basis of his plea agreement, his understanding that 110 gang members routinely armed themselves with firearms in order to protect their territory, to protect their drug trade, and to project a violent attitude to rival gang members. But isn't it an inference that the district court has to draw that on these little sales, he was doing $5 and $10 bags, that he would need a gun for protection for those transactions, which are so minor? Well, Your Honor, two points. First of all, I don't think that it's necessarily fair to characterize his drug trafficking as minor. There were 12 controlled buys from this defendant during a several-month controlled period. And what was the largest amount of drugs in those 12 controlled buys? I think the largest amounts were about a half an ounce of crack for $800. So these are distribution-weight buys, Your Honor. These are not – some of them are small, that's certainly true, but they range. And the bigger point, Your Honor, I believe, is that the defendant acknowledged, and this is also in his plea agreement, that by virtue of his membership in the 110 gang, he was able to possess and distribute crack cocaine within 110 gang territory. Could I ask you – I know you're talking about the plea agreement, but on page 87, I guess this is during the plea colloquy, and I think it's repeated in the defendant's brief, the defendant's attorney says, Your Honor, I had a discussion with Mr. Wynn and Mr. Kamandua, the prosecutor. Mr. Wynn is acknowledging all of the general allegations in the complaint, but he was incarcerated for a lot of the time, so he doesn't have personal knowledge of a lot of what the government alleges. But he certainly admits to the specific charges against him. What are we to make of this? In other words, is he disavowing? Was this a disavowal of what was in the plea agreement, which if I understood the brief, he was essentially sort of forced to accept? Well, certainly it is true that the plea agreement was offered to him by the government. No, more than that, that the plea agreement was the standard plea agreement that you offer to everybody in this with dire consequences. Take it or leave it. And so this statement about firearms and so on, which I'm sure you put in intentionally because that under Soto and so on would be enough, but then you have this fellow saying, Okay, I agree with that, but you know, because I have to, but we're in effect saying there are parts of that that don't really apply to me. Isn't he saying that? Well, the statement is what the statement is. What are we to make of that statement? What should Judge Scullin have made of it? Well, I don't think it should be read as disavowing the defendant's testimony a page before where he acknowledged after the recitation of facts that they were essentially true. It may well be because it's true that there were a number of specific allegations in the indictment against co-defendants that the defendant may well not have been aware of. But he wasn't charged with having a gun. That was not part of the charge. So he can agree to the whole thing and say I'm guilty without accepting every word of it and then say at the sentencing level some of these things which would be aggravating don't really apply to me. That could have been, but that was not what happened here, Your Honor. And I would also make the point that why not? What I read to you was from the plea colloquy. That's what his lawyer told Judge Scullin. I understand, but I think that Judge Scullin also at sentencing when he was applying this enhancement made note of the fact that Judge Scullin was aware that these gang members routinely armed themselves with guns. He had heard extensive testimony about that. And again, I think the point being— If I read Judge Scullin correctly, yes, Judge Scullin was aware of that, but he in explaining to the defendant why he was taking it into account, he said in effect he was vicariously liable. He said, look, even though you didn't possess a gun, you were a member of this group. Other people possessed a gun. Therefore, you get the whatever points on the law. Yes, Your Honor, and that's all that the law requires. This court made plain in Batista, and that was a case that involved a corrupt police officer who was offering assistance and protection to a drug trafficking organization. There was a gun that one of the other members had in a locked safe that the particular defendant certainly had no knowledge of. And the court there, the district court, found that it was reasonably foreseeable to that defendant because of his experience as a police officer. And so he must have known that drug trafficking organizations frequently used guns, and so that was sufficient for this court in Batista to affirm the two-level gun enhancement. Certainly in this case, and that's why I think the point that Judge Scullin was making when he talked about the prevalence of firearms and firearm-related violence with respect to this particular gang, is that the logical conclusion is you can't be a member of the 110 gang and be completely oblivious that there are firearms being used to protect drug trafficking. But given this statement that he made at the plea agreement, would it be possible for us to vacate this part of the sentence and send it back to Judge Scullin and say, you may find this, but we don't think that you focused on this statement, which may lead you to believe that in this case this person did less? What would be wrong with doing that? I see that my time is up. May I continue? You may have to, of course. Thank you, Your Honor. Your Honor, I think the difference there is twofold. At best, counsel's statement, I believe, is equivocal. And that's why I made the point that I don't believe that the Court's finding supporting the two-level gun enhancement depends upon the defendant's admission in this plea agreement. I clearly think that's sufficient, Your Honor. But I also think that the point that Judge Scullin made at sentencing when he found that this was an appropriate application is the nature of this gang involved so much gun use. You say that at sentencing Judge Scullin essentially ignored all of this and just looked to the general statements about the gang. Well, at a minimum, he identified an independent reason. It did not depend on the defendant's admission in order to find that. And that would certainly be sufficient, Your Honor, for this Court. Again, the standard here ought to be whether that finding was clearly erroneous. I don't think there's any suggestion that the district court misapplied or misunderstood the law. And given that factual record, I don't see how the Court would find it. Thank you, counsel. If there are no further questions, we'll address them in our submission. Thank you. Mr. Millis, you reserved a minute for a vote. Very briefly, Your Honor. I would say I've been doing this when I'm a CJA panel for almost 40 years, and I've handled a lot of cases. I've never seen a case where there was so little actual evidence against my client. No statements, no surveillance, no wiretaps, no nothing other than documentation showing that he made these controlled buys and a few screenshots from Facebook. And I don't know why these people go on Facebook. It just doesn't make any sense. But that's all I have to say unless there's more questions. Thank you. Thank you both. I will reserve the decision. Well argued by both sides. Thank you. The next matter on our calendar is on submission, so I will ask the clerk to adjourn the Court. The Court stands adjourned. Thank you.